W. R. PATE v. CHARLES G. BLADES.

(Filed 15 October, 1913.)

1. Deeds and Conveyances — Fraud—False Representations—Damages.

    The old doctrine that an action to recover damages for fraud and deceit would not lie in the case of a sale and purchase of

land, in reference to the quantity or correct placing of the property, when the facts were readily ascertainable by survey or otherwise does not now obtain where positive fraud is shown, as where the grantor was unacquainted with the lands conveyed and was deceived and thrown off his guard by false statements designedly made by the grantee at the time, and reasonably relied on by him, and there was nothing to arrest attention or arouse suspicion concerning them. *Gray v. Jenkins*, 151 N. C., 83.

**2. Same—Knowledge—Scienter.**

One who induces another to make a deed to lands to him by such false representations as amount to positive fraud, when he did not know whether the representations made by him were true or false, is as culpable in case the other is reasonably misled or injured by them as if at the time he knew them to be untrue.

**3. Deeds and Conveyances—Fraud—False Representations—Trials —Evidence—Nonsuit.**

In his action to recover damages for fraud and deceit in the purchase of land, there was evidence for the plaintiff, and *per contra*, tending to show that the plaintiff was, at the time of his executing the deed to the lands to the defendant, under 21 years of age, stationed near Baltimore as an enlisted soldier, awaiting transportation to foreign parts, and unacquainted with the value of the lands conveyed, and under these circumstances the defendant went to see him, assured him he had been over the lands, and that he could rely upon his knowledge of the lands and its value, and so relying upon the defendant's false representations that $1,000 was a fair price for the lands, accepted that sum for it, when, as he ascertained later, just before the commencement of this action, it contained a much greater acreage than he was led to believe, and was worth $10,000 or $11,000: *Held*, viewing the evidence in the light most favorable to the plaintiff, the issue of fraud was for the determination of the jury, and a motion to nonsuit was improperly granted.

**4. Deeds and Conveyances — Fraud—False Representations—Quitclaim Deeds—Trials—Evidence.**

The plaintiff, while an enlisted man in the army, and awaiting at Baltimore transportation abroad, was induced by the defendant to convey his lands to him for $1,000, when it was reasonably worth $10,000 to $11,000, under such representations as were evidence of positive fraud; there was also evidence that after the plaintiff returned and had opportunity for investigation, but was still without further knowledge of the facts which had been

PATE *v.* BLADES.

falsely represented, he was induced by the defendant to sign a quitclaim deed for the consideration of $200: *Held,* it is for the jury to determine whether, under all the facts and attendant circumstances, the plaintiff acted as a reasonably prudent man in making the second deed without further investigation, and whether the fraud and deceit existent when the first deed was obtained were effective in procuring the execution of the second deed, and whether the one was the natural effect of the other.

APPEAL by plaintiff from *O. H. Allen, J.,* at the April Term, 1913, of CRAVEN.

Civil action to recover damages for fraud and deceit in the purchase of land.

There was evidence on part of plaintiff tending to show that, in April, 1899, plaintiff, then under 21, an enlisted soldier in the United States Army, was at Fort McHenry, Baltimore, Md., awaiting transportation to Philippine Islands; that he had been in the army since 1896. While at Fort McHenry, plaintiff received from defendant, by mail from New Bern, N. C., a proposition for an option on a tract of land in Craven County, N. C., abutting on Slocumbs Creek and Neuse River, about 20 miles below New Bern, and which plaintiff supposed to be about 100 acres, some of the land, about 150 acres having been previously sold; that soon after receipt of option, defendant appeared at Fort McHenry and, after much persuasion, induced plaintiff to sell and convey to him the land in question for the sum of $1,000. The conversation and transaction, by which the trade was brought about, was given at great length in plaintiff's testimony, and containing, among other things, evidence to the effect that defendant estimated the tract at 100 to 150 acres and represented that it was of very little value; that $1,000 was a very favorable price for it, and, in this connection, plaintiff further testified as follows: "At the time I sold the land in Baltimore I thought I owned about 100 acres. I did not know the value of the property at the time I executed the deed in Baltimore. I had not seen the land since I was a child. I did not know the extent of the property at the time I executed the quitclaim deed. I was relying upon Mr. Blades absolutely at the time I executed the deed in Baltimore.

He said he had been over the land and looked over it and knew it thoroughly, and he would not take advantage of me, for I knew nothing about it, and he was offering me a very good price. I was 21 years old in September after executing the deed in April, 1899."

Plaintiff's evidence further tended to show that, after making this deed, in the line of duty, he went to the Philippine Islands, and, after serving out his time, in January, 1900, he returned to his home in Craven County, about 9 or 10 miles above New Bern, married in 1902, and has since resided in that same neighborhood; that in 1905 plaintiff, who was building a home, was at defendant's lumber plant in New Bern for the purpose of procuring lumber, and, on one occasion, defendant, having ascertained that plaintiff was under 21 when he executed former deed, broached the subject and offered plaintiff $200 to execute an additional deed for the property, describing same as that piece of land lying on south side of Neuse River, between Slocumb and Hancock creeks, adjoining lands of John Pittman, etc., except the portion formerly sold, containing description further: "It is the purpose and intent of this party of the first part to convey hereby all the lands which he now owns in said county of Craven on the south side of Neuse River and between Slocumb and Hancock creeks," etc. Plaintiff testified further, that his mother had died when he was an infant, and his father, having moved to Hancock Creek, died in 1885, when plaintiff was about 7 years of age, when plaintiff went to live with his uncle in the upper part of the county, and had lived there since except when in the army, as stated; that plaintiff was entirely ignorant of the quantity of the land or its value or that the facts were otherwise than as represented by defendant, both when he made the first and second deeds, not having been on or about it since he was 7 years of age and having no occasion to look into it since; that some time in 1911, being down in that locality on other business, and having attention aroused by some very fine timber land he was passing through, he made inquiry, and ascertained it was a part of the land he had conveyed to defendant. Pursuing such inquiry, he ascertained further that

the tract was a very valuable one and contained from 1,000 to 2,000 acres, and he, therefore, entered present suit. There was further testimony to the effect that this tract conveyed was a good purchase at the price of $10,000, and that the timber on it could have been sold for $11,000 or $12,000 at the time of the first conveyance. There were phases of plaintiff's evidence tending to show that defendant did not have full personal acquaintance with the property, and that no actionable fraud was committed, but, as the cause was nonsuited, the testimony which makes in plaintiff's favor is more particularly referred to, that being the aspect in which the cause must now be considered.

At the close of testimony, on motion, there was an order of nonsuit, and plaintiff, having duly excepted, appealed.

*W. D. McIver and R. A. Nunn for plaintiff.*
*Guion & Guion for defendant.*

HOKE, J., after stating the case: It was formerly held, in this State, that an action to recover damages for fraud and deceit would not lie in the case of a sale and purchase of land, in reference to the quantity or correct placing of the property; the position being that the facts were very readily ascertainable, and that the purchaser should have informed himself on these matters by a survey. The principle on which these decisions were made to rest was disapproved in case of positive fraud on the part of the vendor or purchaser, in *Walsh v. Hall,* 66 N. C., 233, and in the subsequent case of *May v. Loomis,* the decisions wherein the former doctrine was upheld, and, more directly relevant to the question, *Credle v. Swindell,* 63 N. C., 305, and *Lytle v. Byrd,* 48 N. C., 222, were expressly overruled; this case of *May v. Loomis* being to the effect, among other positions, that the action lies, in proper instances, both in sales of real and personal property. A succinct reference to this change in the attitude of the Court on this subject, and some of the cases by which it was announced, appears in a still later case of *Gray v. Jenkins,* 151 N. C., at page 83, as follows: "Older cases have gone very far in upholding defenses

resting upon this general principle, and, as pointed out in *May v. Loomis,* 140 N. C., 357-358, some of them have been since disapproved and are no longer regarded as authoritative; and the more recent decisions, on the facts presented here, are to the effect that the mere signing or acceptance of a deed by one who can read and write shall not necessarily conclude as to its execution or its contents, when there is evidence tending to show positive fraud, and that the injured party was deceived and thrown off his guard by false statements designedly made at the time and reasonably relied upon by him. Some of these decisions, here and elsewhere, directly hold that false assurances and statements of the other party may of themselves be sufficient to carry the issue to the jury when there has been nothing to arrest attention or arouse suspicion concerning them. *Walsh v. Hall,* 66 N. C., 233; *Hill v. Brower,* 76 N. C., 124; *May v. Loomis,* 140 N. C., 350; *Griffin v. Lumber Co.,* 140 N. C., 514."

In *Griffin v. Lumber Co.,* 140 N. C., just cited, there is a very full and learned discussion by *Associate Justice Connor* of many of the questions embraced in the present inquiry.

Again, it has been held that while "expressions of commendation or opinion or extravagant statements as to value or prospects or like," not infrequently used by a party in the ordinary effort to puff up the value and quality of his wares in a trade, will not as a rule be considered as fraudulent in law (see the well-considered case of *Cash Register Co. v. Townsend,* 137 N. C., 652), yet, when a party to a bargain makes false assertions as to the value of the property, and the same are knowingly made as an inducement to the trade, and are accepted, reasonably relied upon as such, statements of this kind may constitute an actionable wrong, justifying recovery in case of pecuniary damage. And, in reference to the *scienter,* it has been held that, under some circumstances, "One who intentionally asserts a fact to be true of his own knowledge, when he does not know whether it is true or false, is as culpable in case another is thereby misled or injured as one who makes an assertion which he knows to be untrue." *Modlin v. R. R.,* 145 N. C., 218.

The doctrine sustained in the cases already cited, and referring more particularly to sales of real estate, has been approved and further applied to sales of personal property in several later decisions. *Unitype Co. v. Ashcraft,* 155 N. C., 63, and *Sewing Machine Co. v. Bullock,* 161 N. C., 1, and *Machine Co. v. Feezer,* 152 N. C., 516, and a reference to these cases will no doubt be of aid to a proper consideration of the one now presented.

Applying the principles as stated, we are of opinion that, on the facts as they now appear of record, the judgment of nonsuit should be set aside, for, accepting the facts which make for plaintiff's recovery as true and construing them in the light most favorable to him, this being the established rule when a nonsuit has been ordered, it appears in evidence that plaintiff, under 21 years of age, in the city of Baltimore, where he was stationed as an enlisted soldier awaiting transportation to the Philippine Islands, by the false statements and assertions of defendant as to value and quantity, has been induced to convey to the latter, for $1,000, between 1,000 and 2,000 acres of land, "nearer two than one," situate in the county of Craven, and worth from $11,000 to $12,000, the plaintiff being entirely ignorant of the real facts and relying on the statements of defendant to the effect that the price paid was a just equivalent and "that defendant had been over the land; had looked over it and knew it thoroughly."

It is urged for defendant that, even if this view should prevail as to the first deed, there are no sufficient facts impeaching the second, and nothing occurred at that time to prevent full investigation of the property; but this position may not be allowed as a necessary or legal conclusion from the testimony, for, if the plaintiff was induced to make the first deed by fraud and deceit of the defendant, and he then made a second deed, believing and having reason to believe the assurances made in reference to the first, and there was nothing occurring in connection with the execution of the second deed to arouse attention or provoke inquiry into the amount and value of the property, and plaintiff, under all the facts and attendant circumstances, acted as a man of reasonable business

163—18

prudence in making the second deed without further investigation, in that event, it may well be determined that the fraud and deceit existent when the first deed was obtained was effective in procuring the execution of the second, and the one was the natural result of the other.

On the evidence, as it now appears, the plaintiff is entitled to have the issues submitted to a jury, and it is so ordered.

Reversed.