R. C. PRIDGEN AND J. R. BARDEN v. J. P. LONG AND N. P. JARMAN.

(Filed 12 March, 1919.)

1. **Fraud—Deeds and Conveyances—Intent—Appeal and Error.**

Where damages are sought in an action against the grantor in a deed conveying land, for falsely and fraudulently representing that he had a good and indefeasible title to the same, the question is presented for the consideration of the jury as to whether there was a false assertion of title which was calculated to deceive, made with the intent to do so, and which was relied upon by the grantee, who was thereby misled to accept the title to his injury; and the exclusion by the trial judge of evidence as to the intent of the grantee in making the assertion of title in himself is reversible error.

2. **Fraud—Intent—Evidence—Deeds and Conveyances—Mortgages—Mortgagor and Mortgagee—Title.**

While the transfer of notes secured by a deed of trust, together with assignment of the mortgagee's interest, which was endorsed on the mortgage by the mortgagee to the mortgagor, does not, under our decisions, reconvey the title to lands, which continues in the trustee, a representation by the mortgagor, a layman, that he is the owner of the unencumbered fee-simple title, when conveying it to a third person with covenants and warranty of titles, does not of itself or as a matter of law disclose a fraudulent intent, so as to exclude, under competent evidence or the circumstances attending the transfer, the element of fraud from the consideration of the jury under the doctrine that ignorance of the law excuses no one.

3. **Same—Equity—Purchase—Covenants—Warranty—Measure of Damages.**

Where the action is brought against a grantor of lands by deed containing covenants of seisin and warranty of a fee-simple absolute title to lands to recover damages for falsely and fraudulently representing that he had an unencumbered fee-simple title thereto the action is upon the fraud, and not upon the covenants of the deed, in which latter case a different rule obtains, and an instruction by the court to the jury that the

measure of damages is the amount paid by the grantee for an outstanding equity to perfect his title, leaving out of consideration whether the price so paid was a reasonable amount, fairly and honestly paid, is reversible error.

**4. Deeds and Conveyances—Fraud—Mortgages—Equity—Title—Purchase— Covenants—Warranty—Seisin—Possession.**

In an action for a breach of covenant of quiet enjoyment of the lands conveyed by deed, the plaintiff must show an eviction by the owner of a paramount title, the measure of damages being the amount of the purchase money paid for the land, with interest; but in an action upon a covenant of seisin it is only required that the plaintiff show that the defendant had no title or right to convey, the general rule as to the measure of damages being the same in both actions, with the exception that where there is a failure of title to only a part of the land conveyed the plaintiff can recover a proportionate part of the purchase money, and where the plaintiff has necessarily advanced money to remove an encumbrance the measure of damages is limited to the amount actually and reasonably paid, not exceeding the purchase money and interest.

**5. Deeds and Conveyances—Covenants—Seisin—Breach.**

A covenant of seisin in a deed to lands implies that the covenantor then had not only the possession, but the right to possession; in this State a covenant of title, not merely of possession, being synonymous with the covenant of the right to convey, and it is broken by the grantor, not owning the title, at the time he made the deed.

**6. Deeds and Conveyances—Fraud— Title— Misrepresentations— Investigation—Accord and Satisfaction—Pleadings—Instructions.**

*Held*, upon the facts appearing in this action to recover damages for the alleged fraudulent representation of the grantor as to his title to the lands conveyed by deed with covenants of warranty and of seisin to the effect that he owned the fee-simple title, the questions of whether the grantee relied upon the grantor's misrepresentations of title or was concluded by an independent investigation thereof in the books in the register of deeds office, or whether a settlement in accord and satisfaction had been made between the parties will be raised in the further development of the case at the trial, when properly pleaded, by requests for special instructions upon issues presenting them.

**7. Deeds and Conveyances — Fraud — Caveat Emptor— Title— Covenants— Warranty.**

The maxim of *caveat emptor*, in the absence of fraud, applies to contracts of purchase both as to real property and personal property at law and in equity, the contract as to land becoming executed when the conveyance has been duly delivered, and then the purchaser's only rights of relief for defects or encumbrances depends solely upon the covenants contained in his deed.

**8. Same—Presumptions—Honest Dealings—Rule of the Prudent Man.**

Applying the doctrine of *caveat emptor* where the grantee has fraudulently conveyed an unencumbered fee-simple title to lands that he did not have, it is only required of the grantee that he should have used the reasonable care and diligence of an ordinarily prudent man in conducting the transaction, it being presumed that men will act honestly in their business

dealings, and he is not required to suspect that his grantor is acting otherwise.

APPEAL by plaintiffs from a judgment rendered by *Allen, J.,* at September Term, 1918, of DUPLIN.

On 12 February, 1911, John R. Barden, being the owner in fee simple of the tracts of land in controversy, conveyed the same to R. C. Pridgen for the consideration of $2,000, his wife joining in the deed, which was duly recorded on 6 September, 1911; and on 12 February, 1911, R. C. Pridgen reconveyed the same land, by way of mortgage, to John R. Barden to secure ten notes of $200 each due at stated times from 1911 to 1920. This mortgage was registered 9 March, 1911.

On 5 September, 1911, R. C. Pridgen conveyed the same land to J. P. Long, in consideration of $3,000, and the deed was recorded on 7 September, 1911. On 5 September, 1911, J. P. Long and wife, Willie Long, reconveyed the land to R. C. Pridgen by a mortgage to secure $2,500, evidenced by ten notes due on different dates between January, 1913 and 1922. R. C. Pridgen then, on 15th September, assigned the ten notes and mortgage to J. R. Barden, who paid him for the same, but Pridgen did not transfer the legal title which he held as mortgagee. Long took possession of the property and remained there until about the first of November, 1911, and then surrendered the possession of the land to Barden under an agreement, as alleged by Barden, that Barden was to make improvements and was to sell the land, Long to give him a deed for his equity of redemption, and under this agreement Barden went into the actual possession of the land and remained in possession until 11 November, 1915, when Barden and wife conveyed to the defendant Nelson P. Jarman and wife, Marie C. Jarman, and Barden put them in possession of the premises, and they have remained there ever since without being disturbed by any one.

On 10 July, 1915, J. R. Barden and R. C. Pridgen instituted a suit in the Superior Court of Duplin County against J. P. Long and Willie Long, and duly filed their complaint on 10 July, 1915, in the office of the Clerk of the Superior Court. Long and his wife filed their answer on 21 August, 1915, and at the March Term, 1917, the case came on for trial between Pridgen and Barden as plaintiffs and Long and wife as defendants, and at this term the court ordered a mistrial and made Jarman and wife parties to the action.

On 4 April, 1917, the defendants Jarman and wife filed their answer and therewith commenced proceedings for arrest and bail against John R. Barden, alleging that they paid Barden $3,500 for the land and took his deed with full covenants of warranty and seisin, and further that Barden "specifically and emphatically" declared to them and to their

attorney, Frank L. Potter, that he was the absolute owner of the lands in fee simple, and that there were no encumbrances or liens upon the same, which assurances and representations were relied upon by these defendants, and were false and fraudulent.

The plaintiffs, Pridgen and Barden, filed replies thereto, denying that any false representations were made, and upon all these pleadings the case came on for trial at the August Term, 1918, when the court submitted the three issues set out in the record, to which the plaintiff John R. Barden excepted.

This action, it is alleged, was brought by Pridgen and Barden for the purpose of foreclosing the mortgage made by Long and wife, and to acquire the equity of redemption of the mortgagors for the purpose of perfecting the title in Barden and for the benefit of Jarman and wife. The defendants Jarman and wife filed an answer, setting up the fraudulent representations and alleging that Barden was not seized and possessed of any interest whatever in the said lands, and also alleging that John R. Barden delivered to the defendant Jarman and wife the notes and mortgage given by J. P. Long to R. C. Pridgen and assigned by the latter to him.

Among other instructions, the court charged the jury as follows:

"The deed from the plaintiff Barden to the defendant Jarman conveyed nothing, in so far as the land referred to therein is concerned, but only had the effect of transferring to the defendant Jarman his rights as owner of the notes in question, and no title to the land was conveyed thereby. So I charge you, upon the admitted facts in the pleadings, that in so far as Barden was not the owner of the said land at the time of the sale to Jarman, and inasmuch as he covenanted in the deed that he was seized of said lands, as set out in the answer of the defendant Jarman, there was a breach of said covenant immediately upon the execution of the said deed—that is, the said covenant of seisin—and that the defendant Jarman is therefore entitled to recover of the plaintiff Barden such damages as arose naturally from said breach of covenant just referred to. I charge you further that the defendant Jarman had a right to buy any outstanding title to said lands, in order to protect himself against encumbrances, and that the measure of damages in this case is the amount paid by Jarman in order to protect his title, so long as it does not exceed the total purchase price paid to plaintiff Barden."

The jury returned the following verdict:

1. Did the plaintiff Barden, at the time of the sale of the lands in controversy to the defendant Jarman, falsely and fraudulently represent to the defendant Jarman that he was the absolute owner of the land in controversy, and that the same was free of all encumbrances? Answer: "Yes."

2. Did the defendant Jarman rely upon said representations and purchase said land, believing that Barden was the owner thereof in fee simple?  Answer: "Yes."

3. What damage, if any is the defendant Jarman entitled to recover of the plaintiff J. R. Barden?  Answer: "$800, with interest."

Judgment upon the verdict, and appeal by John R. Barden, one of the plaintiffs.

The other facts are stated in the opinion of the Court.

*Stevens & Beasley and Murray Allen for plaintiff J. R. Barden.*
*Grady & Graham for defendant Jarman and wife.*

WALKER, J., after stating the case: The court was trying an issue of fraud, whether the plaintiff John R. Barden had falsely and fraudulently represented that he had a good and indefeasible title to the land. The intent of Barden to deceive and cheat the defendant Jarman was an essential ingredient of the alleged fraud. This allegation of fraud was the only one submitted to the jury. The question, therefore, was whether there was a false assertion of title made which was calculated to deceive, and with intent to deceive, the defendant, and upon the truth of which the latter relied and was misled thereby to accept the title to his injury. The important element, as to the fraudulent purpose, required that all the relevant facts bearing on it should be submitted to the jury, and the court committed error when it excluded the evidence as to the dealings of the plaintiff with the defendant Long, in regard to the delivery of possession by him to Barden, for the purpose of selling the land and exercising a general control over it, as if he were the absolute owner.

There was some evidence, too, of a settlement, or adjustment, between the parties, Jarman and his attorney agreeing to accept a transfer of the notes and mortgage by Barden to Jarman in full settlement, as appears in the statement of the case.

Barden denied all fraud and testified that he thought he had a good title, and had conveyed such a title to Jarman. It was not good in law, but he may have honestly believed that it was, being a layman and having no technical knowledge of the law or of what was required to constitute a good title. It was not inexcusable ignorance of the law for him to suppose that a transfer of the notes and the mortgage securing them would vest the legal title in him. This would be so in some jurisdictions, where a mortgage is regarded only as a security, and some of the profession may have taken this view prior to the decision in *Williams v. Teachey,* 85 N. C., 402, where this Court held that an assignment of a mortgage, in terms which do not profess to act upon the land,

13—177

does not pass the mortgagee's estate in the land, but only the security it affords to the holder of the debt. The question was even hotly contested in that case. We, therefore, must grant a new trial because of this error.

But the appellant contends that the court stated the wrong rule as to the measure of damages when it charged that the jury would allow as damages what the defendant Jarman had paid to Long, who held the equity of redemption. This was not the correct rule. Where a covenantee buys in an outstanding paramount title, the measure of damages in an action for breach of the covenant of seisin in his deed is the reasonable price which he has fairly and necessarily paid for such title, not to exceed the original consideration paid by him. 11 Cyc., p. 1162; *Price v. Deal,* 90 N. C., 291; *Wiggins v. Pender,* 132 N. C., 640; *Bank v. Glenn,* 68 N. C., 35.

The usual recovery for breach of a covenant of seisin, or for one of right to convey, is the purchase money paid by the covenantor, and interest thereon; but where the vendee is induced to purchase by the fraudulent representations of the vendor as to his title, he may, upon eviction by a better title, recover of his vendor all the damages naturally resulting from the fraud, although the land was conveyed by deed with warranty. The action in such case is upon the fraud, not upon the covenants of the deed, and the rule of damages for breach of the covenant does not apply. 11 Cyc., 1163.

The court applied the latter rule, where there is fraud, to the breach of an ordinary covenant of seisin, and then directed the jury to assess the damages at the amount paid by Jarman, which, of course, meant that this should be done whether it was or not a reasonable amount which was fairly and honestly paid. If this were the rule a covenantee might pay a very exorbitant price for the encumbrance or paramount title and recover the full amount from his covenantor without regard to the question whether he exercised prudence in making the purchase, or whether he could have acquired the title for a less sum. There is no finding here as to whether the price paid by Jarman to Long for the equity of redemption was excessive or moderate. There is evidence that it is far beyond what should have been paid, but only evidence, the plaintiff Barden having testified that Long had offered to take one hundred dollars for his equity and sign the Jarman deed. There is also other testimony that goes to show a lower value of the equity than eight hundred dollars.

Reverting to the nature of these covenants, as bearing upon the damages for a breach, we find it to be generally settled that a plaintiff cannot recover in an action for a breach of covenant for quiet enjoyment without showing an eviction from the possession under a paramount title, and the measure of damages in such cases is the price paid for the

land, with interest. *Williams v. Beeman,* 13 N. C., 483. But in an action upon a covenant of seisin, all the plaintiff need show is that defendant had no title or no right to convey. *Wilson v. Forbes,* 13 N. C., 30; Rawle Covenants for Title, 66; *Brandt v. Foster,* 5 Iowa, 287. The reason of the distinction is that a covenant for quiet enjoyment is a covenant for possession, and that of seisin is a covenant for title, the word being used as synonymous with *right.*

In an action upon the former covenant, an eviction must be alleged in the complaint or declaration, but in an action on the latter it is only necessary to negative the words of the covenant and to allege that the grantor had no seisin or title to the land. 4 Kent. Com., 479; *Richest v. Snyder,* 9 Wend., 416. And, as a general rule, the measure of damages (purchase money and interest) is the same for a breach of covenant of seisin as for a breach of covenant of quiet enjoyment. *Wilson v. Forbes, supra.* This rule of damages is applicable to those cases where there is an eviction from the whole of the land conveyed, or a want of title to the same, but where there is an eviction from a want of title to only part of the land conveyed, and the plaintiff has been put to the necessity, as in this case, of advancing money to remove an encumbrance, the measure of damages is more difficult to be fixed.

With reference to the last statement, it was said in *Price v. Deal,* 90 N. C., at p. 295: "We think his Honor very properly refused to give the instructions asked for by the defendant, upon the question of damages, but we are also of the opinion that there was misdirection in the instruction which he did give to the jury. It is well settled that a party who purchases land with covenants for seisin or quiet enjoyment may protect himself by buying in the outstanding title. *Faucett v. Woods,* 5 Iowa, 400. When that is done, the measure of damages, according to the best lights we have been able to obtain on the point is, that the damages in such a case would be limited to or measured by, not the value of the land, but by the amount *reasonably* paid for the purpose, provided it did not exceed the purchase money," citing *Faucett v. Woods, supra; Brandt v. Foster,* 5 Iowa, 287; Wood's Mayne on Damages, sec. 255; *Bank v. Glenn, supra.* See, also, 7 Ruling Case Law, p. 1176; *Pate v. Mitchell,* 23 Ark., 590; 11 Cyc., 1165, and the numerous cases in note 47.

The defendant relies on *Lane v. Richardson,* 104 N. C., at p. 650, but the case is distinguishable, for there the Court was speaking of judgments as encumbrances, and not of a defect in the title to the fee. The amount of a judgment, mortgage or other lien is easily ascertained, and the amount being a certain one it necessarily fixes the measure of the recovery.

The covenant of seisin is broken when the deed is delivered, as it implies that the covenantor then had not only the possession, but the

right of possession, and the right of property. This is the primary meaning of seisin; its secondary meaning is possession alone. 5 Modern Am. Law, sec. 593. It is a covenant of title in this State, and not merely one of possession, and is synonymous with the covenant of right to convey (*ibid.,* sec. 595), which also is broken as soon as made.

The plaintiff Barden offered evidence to the effect that the defendant Jarman had undertaken to make an independent investigation of the title before he purchased, and that he did so, and he concludes, therefore, that he acted upon his own investigation, or information therefrom, or from his attorney who made it, and not upon the representations of Barden. He claims that because of this he is discharged from blame, and cites in support of this position 12 R. C. L., sec. 111, p. 357,. and also *Shappiro v. Goldberg,* 192 U. S., 292 (48 L. Ed., 419), where it is said by *Justice Day,* at p. 241: "There are cases where misrepresentations are made which deceive the purchaser, in which it is no defense to say that had the plaintiff declined to believe the representations. and investigated for himself he would not have been deceived. *Mead v. Bunn,* 32 N. Y., 275. But such cases are to be distinguished from the one under consideration. When the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor," citing *Slaughter v. Gerson,* 13 Wall., 379; *So. Dev. Co. v. Silva,* 125 U. S., 247, and other cases decided by the same Court. But whether this principle applies to this case will depend upon the facts regarding . the investigation and other relevant matters as they are developed at the trial, and plaintiff can raise the question by a prayer for instructions on the second issue, or perhaps more specifically and in another way, by asking for an issue presenting the precise matter when it is properly pleaded.

Plaintiff Barden also contended that there had been a settlement between him and the defendant Jarman of their differences in regard to the fraud and breach of the covenant, the latter accepting the notes and mortgage, which were duly transferred to him, as a full accord and satisfaction. If there has been a settlement between the parties it may be pleaded and a corresponding issue submitted so that the jury may determine the question under proper instructions.

Before parting with the case, it may be well to recall some general principles recognized by this Court in regard to the liability of a party who practices such a fraud, as is alleged in this case, in the sale and purchase of land. *Walsh v. Hall,* 66 N. C., 233. The maxim of *caveat emptor* is a rule of the common law, applicable to contracts of purchase

of both real and personal property, and is adhered to both in courts of law and courts of equity where there is no fraud in the transaction. Where land has been sold and a deed of conveyance has been duly delivered, the contract becomes executed, and the parties are governed by its terms, and the purchaser's only right of relief, either at law or in equity, for defects or encumbrances depends, in the absence of fraud, solely upon the covenants in the deed which he has received. Rawls Covenants for Title, 459. If the purchaser has received no covenants, and there is no fraud vitiating the transaction, he has no relief for defects or encumbrances against his vendor, for it was his own folly to accept such a deed when he had it in his power to protect himself by proper covenants. But in cases of positive fraud a different rule applies. The law presumes that men will act honestly in their business transactions, and the maxim of *vigilantibus non dormientibus jura subveniunt* only requires persons to use reasonable diligence to guard against fraud; that is, such diligence as prudent men usually exercise under similar circumstances. In contracts for the sale of land purchasers usually guard themselves against defects of title, quantity, encumbrances and disturbance of possession by proper covenants, and if they do not use these reasonable precautions the law will not afford them a remedy for damages sustained which were the consequences of their own negligence and indiscretion. But the law does not require a prudent man to deal with every one as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of men or the transactions of business, trade and commerce could not be conducted with that facility and confidence which are essential to successful enterprise and the advancement of individual and national wealth and prosperity. The rules of law are founded on natural reason and justice and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering they are well defined and settled. If representations are made by one party to a trade which may be reasonably relied upon by the other party (and they constitute a material inducement to the contract), and such representations are false within the knowledge of the party making them, and they cause loss and damage to the party relying on them and he has acted with ordinary prudence in the matter, he is entitled to relief in any court of justice. *Walsh v. Hall, supra.* In that case *Justice Dick,* after referring to those principles, says: "No specific rule can be laid down as to what false representations will constitute fraud, as this depends upon the particular facts which have occurred in each case, the relative situation of the parties and their means of information. Examples are given in the books, which have established some general princi-

ples which will apply to most cases that may arise. If the falsehood of the misrepresentation is patent and a party accepts and acts upon it with 'his eyes open' he has no right to complain. If the parties have equal means of information, the rule of *caveat emptor* applies and an injured party cannot have redress if he fail to avail himself of the sources of information which he may readily reach unless he has been prevented from making proper inquiry by some artifice or contrivance of the other party. Where the false representation is a mere expression of commendation, or is simply a matter of opinion, the parties stand upon equal footing, and the courts will not interfere to correct errors of judgment. Where a matter which forms a material inducement is peculiarly within the knowledge of one of the parties, and he makes a false representation as to that fact, and the other party, having no reason to suspect fraud, acts upon such statement and suffers damage and loss, he is entitled to relief. Whenever fraud and damage go together the courts will give a remedy to the injured party." Broom Leg. Maxims, 739; Adams Equity, 176; Story's Eq. Jur., ch. 6; *Atwood v. Small,* 6 Ck. and Fin., 232; Chitty on Contracts, 681; Broom's Com. on the Common Law, 347.

For the reasons assigned there must be a new trial of all the issues.

New trial.