WYTHE M. PEYTON v. WILLIAM RAY GRIFFIN ET AL.

(Filed 6 June, 1928.)

**1. Fraud—Elements of Fraud—Misrepresentation Alone Insufficient.**

Where one acting for the sale of land for the owners has informed the prospective purchaser that he had not been upon the *locus in quo* previously, and gives mistaken boundaries, which thereafter the proposed purchaser has had ample opportunity to verify, the mere fact of the misrepresentation is not sufficient, in the action by the holder of a note for a part of the purchase money, to raise the issue of fraud set up in defense to the action.

**2. Same—Burden of Proof.**

The burden of proof is on defendant to show fraud as a defense to an action upon his note when this is relied upon by him.

CIVIL ACTION before *Moore, J.,* at January Term, 1928, of BUNCOMBE.

The evidence tended to show that Roberts and Sumner owned certain land in Henderson County, containing about 486 acres, the Roberts tract containing 173 acres and the Sumner tract 313 acres. These two land owners had given an option on their property to one R. E. Burton. The price named in the option for the Roberts land was $600 per acre, and for the Sumner land $100 per acre. On or about 7 October, 1925, the plaintiff Peyton at a meeting of the Kiwanis Club of which the defendant William Ray Griffin was a member, stated that the reason that he was late at the meeting was because of the fact that he had been out showing "a wonderfully beautiful tract of land that afternoon or had been out to see it, and told of its beauty being almost unsurpassed." This statement was not made to the defendant particularly but to all members present. After the meeting the defendant Griffin intimated to the plaintiff Peyton that he might be interested in the purchase of the property. It was agreed that they would visit the property the next morning. The plaintiff and the defendant Griffin went out to view the land according to agreement. The defendant, in relating the conversation upon the land with respect to its boundaries, said: "I asked Mr. Peyton if it goes over that mountain and he said, 'It goes half way up, and it goes around still further four or five degrees from that particular point, I guess, and it reached almost to the top of the mountain and came down to the beginning, which is further up there perhaps a half mile.' . . . The land that he pointed out to me lay in a compact body. . . . As to my knowledge of that land as to how it lay at the time we closed the deal outside of the information I had gotten from Peyton, I took his word for it. He took me there and showed me the land and pointed out the boundaries definitely to me. I had not been

on the land with any other person before I made the contract with him, and had no information about the lay of the land, as to where it was, except what I got from him. I drove out there three or four times passing by and talked to Mr. Roberts about it, but was not concerned about the boundaries any way at all, because I knew that I knew the boundaries if Peyton told me the truth and I presumed he had. . . . I did not ask information from Mr. Roberts or any other person as to how the land lay, because I thought I knew about it. I thought I knew because Peyton showed it to me and pointed it out definitely. . . . Wythe Peyton pointed out the lands as we could see it. He pointed it out on the mountain, three-quarters of a mile away. He pointed where the boundary line went. Pointed where the boundary line went three-quarters away, and said it went half way up the mountain. . . . He pointed out the improper location of the Roberts tract. . . . All I was concerned about was in the profits I would make, about the land I was to get, but I knew if the men pointed them out correctly. It makes no difference that I know that Mr. Peyton told me that he had not been on the land prior to the day before he took me there. He pointed them out to me. It makes no difference that I know of all that he knew about it was that he said Mr. Burton told him about it when he put the land in his hands the day before, and that I knew that he had not been in three-quarters of a mile of the land. He pointed out to me where the boundary lines were."

Thereafter on or about 9 January, 1926, the defendants received a deed for the property directly from Roberts and Sumner and executed deeds of trust to the owners to secure the balance of the purchase money, and also executed certain notes payable to Burton, the owner of the option, for profit or commissions in making the sale. Some of these notes were transferred by Burton to the plaintiff, and one of the notes so transferred is the basis of the present action. Under the agreement the defendant was to pay the sum of $380 per acre for all the land owned by both Roberts and Sumner. There is no suggestion that the description of the land in the deed from the owners, to wit, Roberts and Sumner, to the plaintiff was defective or did not disclose the correct boundaries of the land. The defendant, however, testified that in April, 1926, he received a map of the land and discovered for the first time that the Sumner land crossed the mountain and was practically worthless for development purposes. Upon making this discovery the defendant went to see the plaintiff Peyton and Peyton stated that "he was sorry, that the land was not what he thought it was." I asked him what he was going to do about it, and he said he "couldn't do anything." The defendant, William Ray Griffin, who conducted the negotiations for

the purchase, was an intelligent man and had bought and sold several tracts of land in and about Asheville. The defendant admitted the execution of the note and pleaded fraud and therefore assumed the burden of proceeding with the proof. At the conclusion of defendant's testimony the trial judge held "that the defendants have not shown sufficient evidence of fraud to go to the jury," and instructed the jury to answer the issue of fraud in the negative.

From judgment rendered the defendants appealed.

*Bourne, Parker & Jones and J. E. Swain for plaintiff.*

*Carter & Carter, J. W. Pless and Merrimon, Adams & Adams for defendants.*

BROGDEN, J. The only question presented by the record is whether or not there was sufficient evidence of fraud to be submitted to the jury. The defendants seek to avoid the payment of the notes in controversy upon the ground that the plaintiff Peyton falsely and fraudulently misrepresented boundaries of land in controversy, and pointed out to defendants a false location thereof with intent to cheat and defraud them. The principles of law involved in the case are clear and undisputed. The main difficulty consists in the application of well established principles to the facts disclosed by the record. "The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss." *Electric Co. v. Morrison,* 194 N. C., 316. It is also well established that "if the parties have equal means of information, the rule of *caveat emptor* applies, and an injured party cannot have redress, if he fail to avail himself of the sources of information which he may readily reach, unless he has been prevented from making proper inquiry, by some artifice or contrivance of the other party." *Walsh v. Hall,* 66 N. C., 239; *May v. Loomis,* 140 N. C., 350, 52 S. E., 728; *Tarault v. Seip,* 158 N. C., 363, 74 S. E., 3; *Furst v. Merritt,* 190 N. C., 397, 130 S. E., 40. Furthermore in *Tarault v. Seip,* 158 N. C., 363, 74 S. E., 3, the Court said: "That he made a mistake is not sufficient. Erroneous statements made by the vendor in the sale of land as to the location of a boundary are not sufficient, standing alone, to impeach the transaction for fraud." Again in *Gatlin v. Harrell,* 108 N. C., 485, 13 S. E., 190, the Court considered the question of fraud involved in pointing out the boundaries of land. The Court said: "The

whole of the evidence accepted as true did not in any reasonable view of it prove the alleged fraud and deceit. The proof was that the defendants pointed out to the plaintiff certain corners and line trees and lines of the tract so sold, and that these or some of them were not the true ones; but there is nothing to prove that the defendants knew that they were not the true ones, nor that they fraudulently intended to mislead, deceive and get advantage of the *feme* plaintiff." *Ramsey v. Wallace,* 100 N. C., 75, 6 S. E., 638; *Pate v. Blades,* 163 N. C., 267, 79 S. E., 608; *Pritchard v. Dailey,* 168 N. C., 330, 84 S. E., 392; *Pridgen v. Long,* 177 N. C., 189, 98 S. E., 451; *Evans v. Davis,* 186 N. C., 42, 118 S. E., 845. The whole subject is discussed in an extensive annotation to the case of *Lynch v. Palmer,* 33 A. L. R., 842.

Applying these principles of law to the case at bar, it appears that the plaintiff was employed by Burton to sell the land the day before he mentioned the beauty of the premises at the meeting of the Kiwanis Club. It also appears from the evidence that Peyton told the defendant Griffin that he had not been on the land prior to the day before he took him to view the premises. It further appears that the defendants were informed that all the plaintiff knew about it was what had been told him by Burton. The plaintiff Peyton made no positive statement or declaration as to whether he knew the boundaries of the land or not. He undertook to point out the boundaries to the defendants when the parties were three-quarters of a mile away. The defendants had from 7 October, when the land was pointed out, until 9 January, when the deeds were delivered, to make a closer inspection of the land if they so desired. They knew that the land did not belong to the plaintiff or to Burton, but that the land, in contemplation of purchase, was the Roberts land and the Sumner land. The owners of the land were therefore plainly identified, and the fact that the plaintiff had no personal knowledge of the boundaries plainly disclosed. Furthermore in January deeds, apparently containing a proper description of the land, were executed and delivered by the owners to the defendant. All information therefore concerning the proper boundaries was then presently available.

After reviewing the evidence, with the liberality which the law requires, we are constrained to hold that upon the whole record there is no evidence of fraud warranting the submission of such an issue to the jury.

Affirmed.