## MAX PLOTKIN v. REALTY BOND COMPANY.

(Filed 12 April, 1933.)

**1. Fraud A a—**

The essential elements of actionable fraud are a representation, its falsity, knowledge and fraudulent intent on the part of the person making it, deception and injury.

**2. Fraud A e—It is duty of grantee to read deed unless prevented by fraud.**

It is the duty of the grantee in a deed to read the instrument unless prevented from so doing by fraud or misrepresentation on the part of the grantor, and where he fails to read the instrument after full opportunity he may not recover on the ground of fraud for the failure of the deed to convey certain adjoining land represented by the grantor to be included therein.

**3. Fraud C e—Evidence in this case held insufficient to show deception or fraudulent intent, and nonsuit should have been granted.**

A. conveyed certain land to B. B. conveyed the northern corner thereof to the city, and then conveyed the remainder to defendant by deed describing the whole tract and including in the description the part previously conveyed to the city. The defendant conveyed the land to plaintiff by deed erroneously containing the description in the original deed to B. Defendant's agent pointed out the land to plaintiff and represented that certain land adjoining the property on the west was included therein. All the deeds were recorded, and plaintiff given opportunity to investigate the title. The description in the deed would have disclosed that the land to the west was not included therein. There was no evidence that defendant's agents knew that a part of the property had been conveyed to the city, or that they knew the boundaries of the property. *Held,* the grantor's action to recover damages for fraud should have been nonsuited, there being evidence that the grantee should have discovered the error through proper diligence, and there being no evidence of knowledge or fraudulent intent on the part of the grantee's agents.

**4. Deeds and Conveyances C f—**

Where certain property not owned by the grantor is included in the description in the deed through the mutual mistake of the parties, the grantee may not recover therefor on the deed's covenant of seisin.

CIVIL ACTION, before *Harding, J.,* at February Term, 1932, of
FORSYTH.

Couslar owned a rectangular lot at the corner of Walnut and Broad
streets in the city of Winston-Salem. He conveyed to the city a portion
of the lot for the purpose of rounding the intersection of said streets,
and this space was paved and sidewalks built. The remaining portion
of the lot, then owned by Couslar, was in the form of a triangle.
Subsequently Couslar conveyed the lot to defendant by deed duly re-
corded. This deed described the original rectangular lot and hence in-
cluded the portion owned and paved by the city.

The defendant and the plaintiff entered into an agreement to exchange
certain lands or lots, and as a result the plaintiff received a deed from
the defendant for the Couslar lot. The description of the land therein
was the same as that contained in the deed from Couslar to the defend-
ant. Hence the deed to the plaintiff included the portion owned by the
city and then paved and used as a street.

The plaintiff's deed, executed by the defendant, was duly recorded on
25 March, 1927. Thereafter, on 14 July, 1928, the plaintiff instituted
the present suit against the defendant. He alleged that the agent of
defendant pointed out the land to him before the deed was executed,
and that the lot so pointed out included an area west of and adjoining
the lot described in the deed. It was further alleged that in pointing
out said area that the defendant did not own, the plaintiff was misled,
deceived and defrauded, and that the defendant intended to deceive and
defraud the defendant by such false representation. The plaintiff fur-
ther alleged that the deed from the defendant to him contained a cove-
nant of seisin and warranty, and that there was a breach of the covenant
of seisin for that portion of land described in the deed which was
at the time covered by the street as aforesaid. Whereupon, the plaintiff
prayed damages in the sum of $2,250.

The defendant filed an answer alleging that in executing the deed to
the plaintiff the draftsman had followed the description in the deed from
Couslar to the defendant, and through inadvertence and mistake had
included in the description that portion of land theretofore conveyed by
Couslar to the city and then covered by the street and sidewalk. The
defendant further denied any and all false representations with respect
to pointing out any boundaries of the lot or of an area adjoining and
west of the triangular lot actually owned by the defendant at the time
the deed was made.

The plaintiff testified: "We went to the property located at the south-
west corner of Broad Street and Walnut Street. When we got to that
property Mr. Wilkes took out a little book and read the dimensions, and

then he stepped it off to certain points. Mr. Pfaff sent Mr. Wilkes out with me to look at that piece of property. I have seen Mr. Wilkes in and around the place of business of Realty Bond Company. He was selling real estate for the Realty Bond Company or he was carrying a paper and showing different pieces of property. Mr. Wilkes stepped off from the sidewalk now there from that point on the southern line, going west 81 and some tenths feet to an old fence that stood there at that time; then he kept on stepping around from that point, going north, to a certain point at the sidewalk where the sidewalk looked a little newer than the old sidewalk on Walnut Street. . . . Then we went along Walnut Street with the sidewalk to a certain point 50 some feet; . . . then from that point back to the point of beginning around the curve. . . . After I went out there and looked at the property I appointed an attorney to look up the title. He made a report to me, and pursuant to that report I signed a deed to my property and received deeds from them for their property and $1,050 in cash. . . . I suppose I did state in the original complaint that a part of the property pointed out to me had been deeded to the city of Winston-Salem. . . . I may have stated to Mr. Pfaff that they had deeded me something that was in the street. . . . I had a reasonable time to investigate the title to the property before I got the deed. The deed was handed to an attorney of mine employed for the purpose of investigating the title. He did investigate the title. I probably had the deed a couple of days in all investigating the title. The deeds were signed after he finished his investigation. The attorney chosen by me had done some work for me before and I had confidence in him. He reported to me that the title was all right and I relied on his statement about it. Relying upon his statement about it I accepted the deed to this property. . . . Mr. Wilkes did not do anything to prevent me from having a surveyor to locate this lot, . . . nor did the Realty Bond Company do anything to prevent me from making inquiry as to the exact location of the property. The Realty Bond Company gave me time between the date of the contract and the delivery of the deed in which to examine the title and determine for myself. I suppose it was about a week from the date of the contract until the deeds were delivered. . . . After Mr. Wilkes had pointed out the area I relied on the representation that he made as to the piece of ground that was being deeded to me." The plaintiff also testified that the triangular piece of property actually conveyed by the deed was worthless.

The following issues were submitted to the jury:

1. "Did the defendant, through its agent, point out the boundaries F to J to H to E to G and back to F, as alleged in the complaint?"

2. "If so, was the plaintiff induced to accept his deed by fraud and deceit, as alleged in the complaint?"

3. "What amount of damages, if any, is plaintiff entitled to recover due to the misrepresentation by the defendant?"

4. "Did the defendant execute to the plaintiff a deed containing a covenant of seisin for the tract on the plat designated A, B, C, D?"

5. "Was the description inserted through the mutual mistake of the parties, and should it be corrected to contain tract designated 'F, to B, to E, to G, to F,' as alleged in the answer?"

6. "If not, what amount of damages, if any, has the plaintiff sustained due to breach of the covenant of seisin?"

The jury answered the first issue "Yes," the second issue "Yes," the third issue "$1,250 without interest," the fourth issue "Yes," and the fifth issue "Yes," and did not answer the sixth issue.

From judgment upon the verdict the defendant appealed.

*Elledge & Wells for plaintiff.*
*Ingle & Rucker for defendant.*

BROGDEN, J. Was there sufficient evidence of fraud and deceit to be submitted to the jury?

"The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss." *Electric Co. v. Morrison,* 194 N. C., 316, 139 S. E., 455; *Peyton v. Griffin,* 195 N. C., 685, 143 S. E., 525.

The evidence offered by the plaintiff tended to show that the agent of defendant pointed out a certain boundary of land, and that in preparing the deed only a portion of such lot pointed out was included therein. The plaintiff testified that he relied upon the representations so made by the defendant. Nevertheless a deed was tendered covering a portion of Walnut and Broad streets and not including the area west of the land described in the deed, which the plaintiff contended was pointed out to him. The plaintiff took the deed and turned it over to an attorney in whom he had confidence in order that a full investigation of the title could be made before the consummation of the transaction. Presumably, after a full investigation, the attorney approved the title, and the deal was closed. There is no evidence that the defendant resorted to any trick, scheme or artifice tending to prevent full and complete examination of the description of the property contained in the deed as

well as the title to the same. Such facts classify this case in the line of cases illustrated by the following: *Gatlin v. Harrell*, 108 N. C., 485, 13 S. E., 190; *Griffin v. Lumber Co.*, 140 N. C., 514, 53 S. E., 307; *Clements v. Ins. Co.*, 155 N. C., 57, 70 S. E., 1076; *Terault v. Seip*, 158 N. C., 363, 74 S. E., 3; *Pitlman v. Tobacco Growers Asso.*, 187 N. C., 340, 121 S. E., 634; *Grace v. Strickland*, 188 N. C., 369, 124 S. E., 856; *Colt Co. v. Kimball*, 190 N. C., 169, 129 S. E., 406; *Peyton v. Griffin*, 195 N. C., 685, 143 S. E., 525. The prevailing principle declared in the aforesaid line of cases was expressed in *Griffin v. Lumber Co., supra*, as follows: "It is elementary learning that common prudence requires that before signing a deed the grantor should read it, or, if unable to do so, should require it to be read to him, and his failure to do so, in the absence of any fraud or false representations as to its contents, is negligence, for the result of which the law affords no redress. . . . But when fraud or any device is resorted to by the grantee which prevents the reading, or having read, the deed, the rule is different." In like vein *Varser, J.*, wrote in *Colt v. Kimball, supra*, the following: "Defendant's testimony shows that he is a man of education and prominence, accustomed to the transaction of business, and of much experience, with more than an average education; who has served on the board of education for Vance County for many years. It was his duty, unless fraudulently prevented therefrom, to read the contract, or, in case he was not able to read the fine print without stronger glasses, to have it read to him. This rule does not tend to impeach that valuable principle which commands us to treat each other as of good character, but rather enforces along with it, the salutary principle that each one must 'mind his own business' and exercise due diligence to know what he is doing. Having executed the contract, and no fraud appearing in the procurement of the execution, the Court is without power to relieve the defendant on the ground that he thought it contained provisions which it does not."

Furthermore, in *Terault v. Seip, supra*, the Court said: "An essential element of actionable fraud is the scienter or knowledge of the wrong on the part of the vendor. Where the representation is made as a part of the warranty, the vendor is held liable for his statement, whether he knew it to be true or not, but where the action is for fraud the burden is upon the party setting it up to prove the scienter."

There is no evidence in the record tending to show that the agent of defendant knew that a part of the original lot had been conveyed to the city, nor does it appear that he knew the exact boundaries of the land owned by the defendant. While it is true that the deed accepted by the plaintiff covered land belonging to the city, the jury found that such portion was incorporated through the mutual mistake of the parties.

Such finding of course eliminates the right to recover upon the breach of the covenant of seisin.

The Court is therefore of the opinion, and so holds that the motion for nonsuit, duly made upon the cause of action sounding in fraud and deceit, should have been granted.

Error.