C. HARRY KLEINFELTER AND DORIS L. KLEINFELTER v. NORTHWEST BUILDERS AND DEVELOPERS, INC.

No. 7917SC177

(Filed 15 January 1980)

1. **Fraud § 5— boundaries—buyer's reliance on seller's representations**

In the sale of real estate it is usual and necessary that the seller point out to the prospective buyer the boundaries of the tract, and the buyer should have the right to rely on the boundary representations of the seller when the seller purports to know them, the extent to which the buyer may rely upon them being dependent upon the size of the lot, the terrain and other circumstances.

2. **Fraud § 12— seller's representations as to boundaries—buyer's reliance on representations—summary judgment improper**

The trial court erred in entering summary judgment for defendant in plaintiffs' action to recover damages for fraud and deception and unfair trade practices where there was a genuine issue of fact as to whether plaintiffs were entitled to rely on the representations of defendant's agent with respect to the boundaries of a lot sold by defendant to plaintiffs where the evidence tended to show that defendant's agent showed plaintiffs the lot in question which consisted of a wooded area, a lawn, including a portion 60 feet wide on the east side of the house, and a dwelling; the agent told plaintiffs that the location of the southeast corner was a stake near the edge of the woods and outside the lawn area; half of the lawn which defendant had leveled and planted was in fact located on an adjoining lot; and the lot corner and boundaries near the area in question were in the woods and on a steep hill and were thus neither visible nor accessible.

APPEAL by plaintiffs from *Long, Judge.* Order entered 4 December 1978 in Superior Court, STOKES County. Heard in the Court of Appeals 18 October 1979.

In 1975 defendant, in the real estate development and home construction business, owned Lot No. 53, Sec. 4, Westridge Subdivision, King, North Carolina, as shown on map recorded in Plat Book 4, Page 79, in the office of the Register of Deeds, Stokes County. Lot No. 53 is shaped like an hourglass, fronts about 250 feet on the south side of Westridge Drive, is narrow in the center, has a depth of about 525 feet, and is 178 feet wide across the back. The terrain is hilly and wooded.

Defendant constructed a dwelling near the southeast corner of Lot No. 53, about 30 feet from both the south and east boundary lines. Apparently, this location was suitable because it was

level. Defendant determined that the only level area for the drainage lines from the septic tank was about 30 feet across the east boundary line onto Lot No. 52.

Defendant on 13 February 1975 obtained from the owners of Lot No. 52 (Colyer) a perpetual easement for an underground septic tank pipeline, and defendant agreed to "make level the surface of the ground above said septic tank line."

Defendant leveled the ground in front and on the east side of the dwelling, then planted grass in the leveled area, which included the area leveled for the septic tank drainage on Lot No. 52, about 34 feet wide.

Plaintiffs alleged, by complaint filed 25 May 1978, that the dwelling and lawn were shown to him as a prospective buyer, and that the lawn was about 60 feet wide on the east side of the house. Plaintiffs further alleged that they asked Michael Wilmoth, defendant's agent, to point out to them the location of the southeast corner of Lot No. 53, and that Wilmoth told them the corner was a stake near the edge of the woods and outside the lawn area. Thereafter, on 27 May 1975, plaintiffs purchased the house and lot from defendant. The deed contained the following description: " . . . Lot No. 53 as shown on the map of Westridge, Section No. 4, as recorded in the Office of the Register of Deeds of Stokes County, North Carolina, in Plat Book 4, Page 79, to which reference is hereby made for a more particular description."

Plaintiffs also alleged that upon taking possession under the deed, plaintiffs tended the lawn area, including that part thereof located on Lot No. 52 owned by Colyer. In November 1975, Colyer complained about plaintiffs' trespass upon Lot No. 52, and showed to plaintiffs some stakes hidden by the grass which marked the common corner and boundary of Lots No. 52 and No. 53. The true dividing line between the lots cut off 34 feet or one-half of the plaintiffs' side yard.

Plaintiffs further alleged that the lawn area was prepared and planted by defendant with no indication of the boundary line, and that the representation by defendant's agent Wilmoth of the location of the boundary were false representations or were representations made recklessly with intent that plaintiffs as

potential buyers would rely on them, and that plaintiffs did rely on the representations and suffered injury.

Finally, plaintiffs alleged that defendant's actions and conduct as alleged constituted (1) common law fraud and (2) deceptive and unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1.

Plaintiffs also alleged a claim against defendant for a hairline fracture in a bathtub and a claim for failure to fill in the driveway.

Defendant by answer admitted the sale of Lot No. 53 to plaintiffs and admitted its acquisition of the easement on Lot No. 52 and the installation and maintenance of the septic field for the dwelling of plaintiffs on Lot No. 53, but denied all other material allegations of the complaint. Defendant asserted the failure of plaintiffs to assert a claim, the one-year statute of limitations as to the N.C. Gen. Stat. § 75-1.1. claim, the three-year statute of limitations, and other defenses not relevant to this appeal.

Defendant moved for summary judgment and supported the motion by the affidavit of Norman Simmons to the effect that plaintiffs appeared to have normal intelligence and awareness of business transactions. Plaintiffs in opposition to the motion offered their affidavits and depositions which in general supported the allegations in their complaint.

The trial court allowed the motion for summary judgment with respect to the First Claim for common law fraud and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, and to the Second Claim for punitive or exemplary damages, but denied the motion with respect to the claims based on the defective bathtub and failure to fill in the driveway.

*Pfefferkorn & Cooley by William G. Pfefferkorn and J. Wilson Parker for plaintiff appellants.*

*Hudson, Petree, Stockton, Stockton & Robinson by Dudley Humphrey and William A. Brafford for defendant appellee.*

CLARK, Judge.

In determining whether the trial court erred in allowing partial summary judgment with respect to plaintiffs' claims for fraud, deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1,

and punitive damages, it is particularly significant that the only matter offered by defendant to support its motion for summary judgment was the affidavit of Norman Simmons to the effect that he knew plaintiffs and they appeared to have normal intelligence and awareness of business transactions. The defendant, therefore, relies entirely on the principle that the plaintiffs had no right to rely upon the representations of the defendant, because the parties were on equal terms and the plaintiffs had knowledge of the facts or means of information readily available and failed to make use of their knowledge or information. This principle is established in many North Carolina decisions. *See, e.g., Peyton v. Griffin,* 195 N.C. 685, 687, 143 S.E. 2d 525 (1928). *See, also, Keith v. Wilder,* 241 N.C. 672, 86 S.E. 2d 444 (1955). Our inquiry, however, does not stop with this rule.

[2] Plaintiffs' allegations of fraud included the false representation by defendant's agent of the location of the boundary when plaintiffs were prospective buyers of the property. Plaintiffs further alleged that the lot corner and boundaries near the area in question were in the woods and on a steep hill and were thus neither visible nor accessible. Further, defendant leveled and planted a lawn, one-half of which (34 feet) was located in an adjoining lot, which tended to lend support to defendant's representation that the entire lawn area was within the boundaries of the lot offered for sale to plaintiffs.

[1] Under these circumstances, could the plaintiffs reasonably rely on the representations of the defendant's agent as to the location of the boundary? In the sale of real estate it is usual and necessary that the seller point out to the prospective buyer the boundaries of the tract. Generally, the buyer does not have the requisite knowledge or skill to accurately determine courses and distances for the purpose of establishing the boundaries of the tract he proposes to buy; he must rely on the representations of someone, and he should have the right to rely on the boundary representations of the seller when the seller purports to know them. The extent to which the buyer may rely upon the boundary representations is dependent upon the size of the lot, the terrain and other circumstances.

The buyer of real estate is not under the duty to have an accurate survey of the lines and boundaries, *Keith v. Wilder, supra,*

nor does the buyer necessarily have to examine the public records to ascertain the truth where the buyer reasonably relies upon representations made by the seller. *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E. 2d 522 (1965).

In *Keith,* defendant, in procuring plaintiff to purchase timber, pointed out the lines and boundaries of an adjoining tract and falsely represented that it was included in the sale. The court recognized the principle of law relied on by defendant and added: "But the rule is well established that one to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon." 241 N.C. at 675. The court held that since plaintiff had the right to rely on the positive representation the evidence was sufficient to overrule the defendant's motion for nonsuit. *See also, Swinton v. Savoy Realty Company,* 236 N.C. 723, 73 S.E. 2d 785 (1953).

In *Fox, supra,* the court, in reversing a demurrer, stated that whether the purchasers of realty have the right to rely upon the representations of the seller's agent must be determined upon the basis of whether the representation is of such a character as to induce a person of ordinary prudence to reasonably rely thereon. 264 N.C. at 271. The determination of reasonable reliance involves questions of fact which ordinarily may not be determined by summary judgment.

The defendant relies primarily on *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E. 2d 881 (1957); *Harding v. Insurance Co.,* 218 N.C. 129, 10 S.E. 2d 599 (1940); and *Plotkin v. Bond Co.,* 204 N.C. 508, 168 S.E. 820 (1933). *Calloway* involved a representation of the adequacy of a water supply, which could have been easily ascertained by the buyer by turning on the spigots. In *Harding* the seller represented the condition of a building to the buyer who made an inspection, who had ample opportunity to investigate, and who knew the representations made by defendant's corporate president were based upon secondhand information. Also, there was no evidence in *Harding* that the representations were made with knowledge of their falsity or with reckless disregard for their truth. In *Plotkin* there was a representation of a boundary line, but the jury found there was a mutual mistake and not a false

representation, and the court held that the fraud claim should have been nonsuited. We do not find these cases persuasive in support of defendant's position in the case *sub judice.* In contrast, it does not appear at this stage of the proceedings that plaintiffs as a matter of law had any right to rely on the misrepresentations.

[2]   It is apparent that summary judgment on the plaintiffs' Second Claim for punitive damages was allowed because the trial court had determined that summary judgment was appropriate on the First Claim for fraud; and, therefore, there was no basis for the award of punitive damages. Fraud will support an award for punitive damages. *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976); *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976), and since we reject summary judgment for defendant on the fraud claim, we also reject summary judgment on the punitive damages claim. The claim for punitive damages should not be rejected by summary judgment unless it appears that there can be no recovery even if the facts as claimed by the plaintiffs are true. W. SHUFORD, N. C. CIVIL PRACTICE AND PROCEDURE § 56-3 (1975).

Plaintiffs should not be deprived of trial on disputed material issues of fact. We cannot forecast the evidence which the parties will offer at trial. It may appear from the evidence that plaintiffs as a matter of law could not reasonably rely on the alleged misrepresentation, or, on the other hand, it may prove to be a question for the jury.

The partial summary judgment for defendant on both plaintiffs' First and Second Claims was improvidently entered. The judgment is reversed and the cause remanded.

Reversed and remanded.

Judges HEDRICK and MARTIN (Harry C.) concur.