MARGARET RUSHING BERWER, AND MARGARET RUSHING BERWER, GUARDIAN OF WALTER A. RUSHING AND WILLIAM A. RUSHING, MINORS, v. THE UNION CENTRAL LIFE INSURANCE COMPANY.

(Filed 14 December, 1938.)

**1. Fraud § 1—Definition of actionable fraud.**

The elements of actionable fraud are a definite and specific representation which is materially false, made with knowledge of its falsity or in culpable ignorance of its truth, and with intent that it should be relied on, and which is reasonably relied on by the other party to his deception and damage.

**2. Same—**

The remedies for actionable fraud apply to contracts and sales of both real and personal property.

**3. Fraud § 11: Cancellation of Instruments § 12—Evidence of actionable fraud held insufficient to be submitted to the jury.**

Deed to the grantee under whom plaintiffs claim described the land therein conveyed by metes and bounds and recited that the first tract contained "100.1 acres" and the second tract "4 acres, more or less," and contained in all "104.1 acres, more or less." Plaintiffs alleged there was a shortage of 43.1 acres, and introduced evidence that the person arranging the sale represented that there was valuable timber on the tract conveyed, that the timber would bring enough to pay the balance of the purchase price, and that a map and·survey had been made. The evidence disclosed that the tract conveyed did in fact include timbered lands without certainty as to the quantity of land and of the timber, and there was no evidence of any representation as to the number of acres in the boundary, nor evidence that the map and survey had not been made, nor what the map, if made, showed with respect to the acreage or with reference to the timbered lands. *Held:* The evidence was insufficient to be submitted to the jury on the issue of actionable fraud.

**4. Fraud § 3—**

A representation that timber on the lands conveyed was just about enough to pay the balance of the purchase price of the lands is not only indefinite, but is an expression of opinion, and does not constitute a misrepresentation in law.

CLARKSON, J., dissents.

APPEAL by plaintiffs from *Hamilton, Special Judge,* at February Term, 1938, of COLUMBUS.

Civil action for recovery of purchase money paid by reason of alleged actionable fraud, and to enjoin sale of land under deed of trust.

These are substantially the uncontroverted facts: On 30 September, 1927, for recited consideration of $3,000, defendant conveyed to Walter Frederick Rushing, by warranty deed, two tracts of land in Columbus

County, North Carolina, specifically described, the first tract "containing 100.1 acres," and the second "4 acres, more or less—containing in all 104.1 acres, more or less." In the deed there is no other reference to the acreage. Rushing paid $800 in cash, and evidenced the balance by ten promissory notes, each in the sum of $298.91, secured by a deed of trust of even date therewith conveying the said lands.

Walter Frederick Rushing died 24 November, 1927, leaving as his only heirs at law his widow, Margaret Rushing, now Margaret Rushing Berwer, and two minor children, Walter F. Rushing and William A. Rushing, for whom Margaret Rushing Berwer is the duly appointed and acting guardian. Margaret Rushing Berwer is also the duly appointed administratrix of the said Walter F. Rushing, deceased.

Three notes due prior to October, 1931, have been paid. Plaintiff Margaret Rushing Berwer testified that one note was paid by her, and two were paid out of money of her children and coplaintiffs. Under the power of sale contained in the deed, defendant caused the land to be advertised for sale on 26 July, 1933. Whereupon plaintiffs instituted this action to enjoin the sale, to cancel the said deed of trust and notes and for recovery of purchase money, taxes and other expenses paid, less rents for which plaintiffs shall account.

Plaintiffs allege in substance that the defendant, through its agent, falsely, fraudulently and knowingly represented to Walter F. Rushing: (1) That the said tracts of land contained 104.1 acres and that same had been surveyed and the lines and boundaries checked and a plat made of the land, when in fact no such survey had been made and there was a shortage of 43.1 acres in the acreage; (2) that in showing to Walter F. Rushing the lands offered to and bought by him, defendant, by its agent, pointed out as a part of the tracts well timbered "land lying about northwardly of Millican Branch Run and about southwardly of Whiteville-Clarkton Road," stating that said timbered land would about pay for all of the land; (3) that said representations were made for the purpose of inducing the said Rushing to buy; (4) that relying upon them, he purchased the land; (5) that they kept the payments up until they discovered and notified defendant of the shortage in acreage and that the deed did not embrace all the land said Walter F. Rushing had purchased; and (6) that they refused to make further payments until defendant adjusted the shortage, which it refused to do, but instead it caused the lands to be advertised for sale under the power contained in the deed of trust. Defendant denied material allegations.

Plaintiff offered evidence tending to show that: Mrs. Margaret Rushing Berwer, until she was fourteen years old, lived in Columbus County about a mile from the farm in question and that her family still lives there. Prior to the purchase of the farm, she and her husband, Walter

Frederick Rushing, came from Florence, South Carolina, for a day, went into the Waccamaw Bank & Trust Company and deposited $800, and while in the bank inquired of Mr. Coburn, the cashier, "if they had any farms for sale." He told them that he did, and after they talked it over, he made an engagement to take them out to show them the farm. They went with him through the farm on the Clarkton and Whiteville highway. Mrs. Berwer testified: "He showed us the farm. We went down a road in the field, and over to the right of this . . . were shown quite a bit of timber . . . located on the right of the road on the south side . . . going in, north of Millican Branch. Mr. Coburn made the statement that there was just about enough timber there to finish paying for the place. We asked him if everything would be all right to go ahead. Mr. Coburn stated that Mr. Pierce had made a map and a plat of the land, that the place had been recently surveyed and a map made." She further testified that after the conversation with Mr. Coburn they went back to Florence, and in consequence of information received by wire, came down and, with no one present except Mr. Coburn, signed the papers in the bank and deed was delivered to them. No others talked to them or showed them the land. Mrs. Rosa High, mother of Mrs. Berwer, testified that "back in 1927, while they were negotiating this deal for the land Mr. Coburn came to my house one night and told me and my daughter to come up and fix up the papers, that they could turn it now and make a good deal. It was about bedtime when he come. I wired my daughter the next day."

Plaintiff further offered evidence tending to show: That by following the calls in the deed a survey failed to tie up; that the small tract lies within and at the southeast corner of the larger tract; that some of the land included in the boundary of this tract lies north of Millican Branch. E. M. Eutsler, surveyor, as witness for plaintiff, testified that he had surveyed the land and made a map of it, but had not calculated the acreage; that "the line was just out in the woods far enough to be well out in the woods"; and that the reasonable market value of the timbered land *as he saw it* was about ten dollars per acre, top price. Forney Gore, also a surveyor, testified: "I made a map in 1929 of this property. I don't say that it is accurate. My map shows 65 acres in the tract." He further testified that there is "quite a lot of timber on the land north of Millican Branch and south of the line indicated by the figures 16 and 15."

Counsel for Mrs. Berwer asked her this question: "Do you know of your own knowledge why your husband purchased the land?" Objection sustained; exception. She would have answered, "Because, when Mr. Coburn pointed out this land, when we saw the timber land, we relied on his word."

From judgment as of nonsuit at the close of plaintiffs' evidence, plaintiffs appeal to the Supreme Court and assign error.

*S. J. Bennett for plaintiffs, appellants.*
*D. L. Carlton and Powell & Lewis for defendant, appellee.*

WINBORNE, J.   Conceding, but not deciding, that the plaintiffs are the real parties in interest and can maintain this action, C. S., 446, we are of opinion that the evidence offered by the plaintiffs is not sufficient to establish all of the essential elements of actionable fraud.   This is decisive of the case.   Motion for judgment as of nonsuit was properly granted.

"The essential elements of actionable fraud or deceit are the representation, its falsity, *scienter,* deception, and injury.   The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss." *Adams, J.,* in *Electric Co. v. Morrison,* 194 N. C., 316, 139 S. E., 455; *Gatlin v. Harrell,* 108 N. C., 485, 13 S. E., 190; *Cash Register Co. v. Townsend,* 137 N. C., 652, 50 S. E., 306; *May v. Loomis,* 140 N. C., 350, 52 S. E., 728; *Tarault v. Seip,* 158 N. C., 363, 74 S. E., 3; *Peyton v. Griffin,* 195 N. C., 685, 143 S. E., 525; *Plotkin v. Bond Co.,* 204 N. C., 508, 168 S. E., 820; *Ghormley v. Hyatt,* 208 N. C., 478, 181 S. E., 242; *Petty v. Ins. Co.,* 210 N. C., 500, 187 S. E., 816.

The principle applies to contracts and sales of both real and personal property.   *May v. Loomis, supra; Tarault v. Seip, supra; Evans v. Davis,* 186 N. C., 41, 118 S. E., 845.

In the present case there is no evidence that Coburn made any representation, false or otherwise, as to the number of acres in the boundary. Nor is there evidence that the land had not been surveyed and the lines and boundaries checked and plat made.   While there is evidence that Coburn said that Mr. Pierce had made a map, there is no evidence that this statement was not true, nor is there any evidence as to what that map, if made, showed with respect to the acreage or with reference to the timbered land.   All the evidence shows that the boundary includes timbered land north of the Millican Branch, but there is lack of certainty as to the quantity of land and of the timber.   The statement of Coburn that there was just about enough timber there to finish paying for the land is. not only indefinite, but an expression of opinion, and is not regarded as fraudulent.

In *Cash Register Co. v. Townsend,* supra, Brown, J., says:   ".   .   . Commendatory expressions or exaggerated statements as to value or

prospects, or the like, as where a seller puffs up the value and quality of his goods or holds out flattering prospects of gain, are not regarded as fraudulent in law. It is the duty of the purchaser to investigate the values of such expressions of commendation. He cannot safely rely upon them. If he does, he cannot treat it as fraud, either for the purpose of maintaining an action of deceit or for the purpose of rescinding a contract at law or in equity. *Saunders v. Hatterman,* 24 N. C., 32, 14 A. & E. (2 Ed.), 34, and cases cited. Kerr on Fraud and Mistake, at page 83, says: 'A misrepresentation to be material should be in respect of an ascertainable fact as distinguished from a mere matter of opinion. A representation which merely amounts to a statement of opinion goes for nothing, though it may not be true, for a man is not justified in placing reliance on it.' "

For full discussion of the applicable principles to factual situations similar to those here involved, see the opinions in cases of *Gatling v. Harrell, supra; Tarault v. Seip, supra;* and *Peylon v. Griffin, supra.*

It is pertinent to say also that there is of record a lack of sufficient evidence of agency to hold defendant liable for any representations of Coburn.

Holding that there is no evidence of fraud, it is unnecessary to consider the exception to evidence.

The judgment below is
Affirmed.

CLARKSON, J., dissents.