FRANK PARKER v. R. SHELTON WHITE AND WIFE ELIZABETH K. WHITE, BELVIDERE BUILDING COMPANY, C. L. LAWRENCE, TRUSTEE, AND FIRST-CITIZENS BANK AND TRUST COMPANY.

(Filed 11 June, 1952.)

**1. Lis Pendens § 2—**

*Lis pendens* is authorized only in actions affecting the title to real property. G.S. 1-116.

**2. Election of Remedies § 2—**

A party who has been induced by fraud to enter into a contract of sale, either of real or personal property, must elect between an action for damages and an action for reformation or for cancellation and rescission, nor will he be allowed to affirm in part and rescind in part.

**3. Same—Complaint held to disclose election to affirm sale of realty and sue for fraud, and plaintiff could not assert remedies of rescission or reformation.**

Plaintiff alleged that he was induced to execute deed to defendants for a part of the tract of land owned by him by reason of false and fraudulent representations made by defendants as to the manner in which defendants would develop the land, maintain and keep open the roads thereon, drain the land, pay a stipulated sum for the privilege of connecting with a water main installed by plaintiff, and make available to plaintiff and his heirs the use of the water main in the development of the remaining property, that defendants breached these representations to plaintiff's damage in specified amounts, which sum should be declared a lien upon the land conveyed. Plaintiff also alleged that by mutual mistake and by error of the draftsman the deed and other papers did not incorporate and include the agreed easement to make it possible for plaintiff to extend and use the water main, and that the deed and other papers should be corrected or declared void and redrawn. *Held:* The complaint shows an election by plaintiff to confirm the transaction and sue to recover damages for fraud, and therefore plaintiff may not at the same time sue to rescind or reform in whole or in part.

**4. Lis Pendens § 2—**

Where it is apparent from the pleadings that grantor has elected to sue for damages for fraud inducing him to execute deed, such election precludes him from asserting the relief of cancellation and rescission or reformation, and therefore the action does not involve title to realty so as to justify the filing of *lis pendens*, and the trial court properly grants defendants' motion for cancellation of such notice.

APPEAL by plaintiff from *Morris, J.,* at October Civil Term, 1951, of WAKE.

Civil action to recover damages for alleged breach of contract in connection with sale by plaintiff and purchase by defendant of certain land, for mandatory injunction, and for reformation of deed, heard upon motion of defendants for order canceling and removing from the records notice of *lis pendens* which plaintiff filed in office of Clerk of Superior

Court of Wake County, N. C., against lands of defendant Belvidere Building Company, etc.

The complaint, filed by plaintiff, when stripped to its framework, alleges substantially the following:

I. That plaintiff, in the year 1928, purchased from his father a certain tract or parcel of land located about 1¼ miles south of the city of Raleigh in St. Mary's Township, Wake County, North Carolina, containing thirty-one acres out of a tract of fifty-one acres owned by his father; that plaintiff planned, by gradual development over a long period of time, to establish on the land so purchased by him, a residential suburb composed of medium sized homes on spacious lots,—for which purpose the land was suitable; that he graded and improved the natural drainage so that in the year 1949 the drainage would take care of any amount of rain water without damage to the land; that in the year 1947, at cost of $8,000, he constructed on said land several large lakes or ponds,—the largest of which to be for fishing and boating, and one of the smaller ones, for swimming; that in the year 1949, at cost of approximately $20,000, he laid into a portion of the land and at a place where it would be useful to the entire area "a large city of Raleigh water main and line,"—the line being so constructed that it could be connected with, and used in further development of plaintiff's property and "adjoining or nearby land" owned by members of his family; that through the years to 1950 he planted trees on, and otherwise improved, the land, and, in the year 1947, constructed, at expense of about $4,000, two main roads, or streets, which ran "in an eastward direction from the old Fayetteville Road and . . . gave easy . . . ingress, egress and regress to, from, over and across the said lands," which roads, by the year 1950, had good surface and side drains; and that U. S. Highway 15-A, a four-lane road southward from Raleigh, has been located, and is now being constructed by the State of North Carolina along the approximate location of the old Fayetteville Road through said land.

II. That in the fall of 1947 plaintiff was approached by a real estate agent (the one, as plaintiff is now informed and believes, frequently used by defendant R. Shelton White and Belvidere Company), who "undertook to persuade" plaintiff to sell to defendant R. Shelton White about 20 acres of said land lying along the east side of the "old Fayetteville Road"; that plaintiff revealed to the real estate agent his plans for developing the property; that the real estate agent represented to plaintiff that if he would sell, White would (1) cause the land to be developed and used in the same manner and for the same type development as that planned by plaintiff, (2) maintain and keep open the roads in substantially the same location, or, if the course be changed, construct the changed portion so as not to impair the purpose for which the roads were intended, (3) use the

land "only in such manner as would be approved by, and acceptable to plaintiff," (4) make the water pipe line which plaintiff had installed available to the remaining portion of plaintiff's land for the use of plaintiff and his family, and (5) do nothing on the land that would depreciate or damage the remainder of plaintiff's land; and that, as a result of, and in reliance upon these representations, plaintiff gave, and executed to said White a 60-day option on the approximate acreage located as above stated. (Apparently the option was not exercised.)

III. That thereafter, in the spring of 1950, the said real estate agent and defendant White renewed efforts to obtain from plaintiff additional agreement, and conveyance of the property located along the highway as stated in preceding paragraph, and, in addition to the representations theretofore made as set forth in preceding paragraph, represented to plaintiff "that if he would agree to sell said property to defendants, the said defendants would pay to the plaintiff the price of $900 per acre for the property so sold, but that the plaintiff would be paid the sum of $5,000 for the privilege to the defendants to connect with and use the city water pipe line which the plaintiff had installed . . .," and same, and the use of it, would be made available to plaintiff and members of his family for use and development of their property; that plaintiff, relying upon the said representations, agreed to sell said property, along the highway, consisting of about 20 acres,—the "sale to be expressly subject to all the terms, conditions and agreements on the part of the purchasers which are above set forth in this complaint and the defendants agreed to purchase the said land on said terms and subject to the foregoing agreements, representations, conditions and provisos."

IV. That "further relying upon all of the aforesaid representations, agreements and conditions," the plaintiff and his wife in July, 1950, executed a certain deed to R. Shelton White and wife, Elizabeth K. White, which appears of record in Wake County Registry in Book 1049, at p. 349, which purports to convey a certain tract of land, specifically described, containing 20.10 acres, etc., and that "plaintiff relied upon the good faith and his belief in defendant's integrity and the agreements made by defendant,"—all of which were material to the transaction, and were intended to, and did induce plaintiff to act.

V. That defendants "breached and violated the agreements and representations, terms and conditions of the understanding between the plaintiff and the defendants" in respect of: (1) The roads; (2) the class of houses constructed; (3) the drains, drain ditches and drainage; (4) the water pipe line; and (5) the swimming pool, all in manner and to the extent set forth in evidentiary detail, to the damage of plaintiff "that the plaintiff was misled to his hurt and damage as aforesaid by the wrongful and false representations and the breach of the terms and conditions be-

tween the plaintiff and the defendants and their agents and employees as aforesaid, all as a result of the plaintiff's inexperience in such matters and due to the experience and misrepresentations of the defendants and/or their agents, servants and employees; that the plaintiff and the defendants were not on an equal footing in respect to this matter and the plaintiff is entitled to the assistance and aid of a court of equity in relieving him from the terrible situation in which he finds himself and as a result of the matters hereinbefore alleged; that as a result of the information now available to the plaintiff, he believes and therefore alleges that the defendants never intended to comply with their representations and promises and agreements, or many of them, concerning the development of the said lands purchased from the plaintiff on the basis thereof and reliance thereupon"; and that the defendants are liable to him in the respective sums of at least: (1) $20,000 for damages caused to the adjoining land of plaintiff "because of cheapening of the neighborhood and depreciation of plaintiff's land"; (2) $2,000 because of "contamination of plaintiff's pool . . . intended for swimming," as result of construction work in manner detailed; and (3) $3,000, as result of wrongful diversion of water upon land of plaintiff in manner detailed; and that defendants should be restrained from continuing the development of said property adjacent to that of plaintiff in such manner as to continue to cause damages to plaintiff's property; that each of the amounts stated in items (2) and (3) just above "should be adjudged to be a lien" against or upon the lands of defendants until and unless the same is paid; and that mandatory injunction issue requiring defendants to correct conditions created by them resulting in damage to plaintiff, as set out in detail.

VI.   "16. That in the original agreement between plaintiff and defendants, it was specifically provided that if defendants should use the water pipe line which plaintiff had constructed to and partly across the lands now held by defendants, that defendants would pay to plaintiff the sum of $5,000 therefor, and that plaintiff also should have full right to use said pipe line to supply the lands retained by him; that, during construction of buildings, defendants have been using said line, but have not paid plaintiff the agreed amount, and plaintiff is entitled to recover of them the sum of $5,000; and that defendants have dug up and obstructed or destroyed portions of said pipe line, and should be required, by mandatory injunction, to so repair same as to make it available to plaintiff as agreed.   (And see amendment as stated hereinafter.)

VII.   "17. That the Belvidere Building Company, as plaintiff is informed and believes and so alleges, is solely owned and controlled by the defendants R. Shelton White and wife, Elizabeth K. White" . . . and another "an attorney for them, being the sole incorporators; and . . . that any purported conveyance to the said Belvidere Building Company

is subject and subsequent to the agreements, representations, terms and conditions between the plaintiff and the defendants as aforesaid."

VIII. "18. That the defendant C. L. Lawrence, Trustee, and the defendant First-Citizens Bank & Trust Company are the holders of a purported lien upon said property of the defendants as appears of record in Wake County Registry of Deeds in Book 1075 at p. 280, and that any rights, if any, of the said defendants are subsequent and subject to the claims of the plaintiff as hereinbefore alleged, but that said trustee and Bank are made parties to this suit in order that the whole matter may be fully presented to the court in this action."

IX. "19. That contemporaneously with the institution of this action the plaintiff caused a *lis pendens* to be filed in the office of the clerk of the court of Wake County under the provisions of General Statutes of North Carolina, Sections 1-116 through 1-120 (1), etc.

"Wherefore the plaintiff prays judgment . . . for relief as hereinabove set forth in detail in this complaint, and for all such other and further relief as may be proper and necessary to protect the rights of the plaintiff, both in law and in equity," etc.

Later plaintiff amended his complaint in these respects:

(1) Paragraph 16 covered by paragraph VI hereinabove, so that the last sentence reads: "That by mutual mistake of the parties and by error of the draftsman, the deed from plaintiff for the said lands, and other paper writings concerning said lands, did not incorporate and include the agreed and necessary easement across the conveyed lands to make it possible for plaintiff to extend and use the said pipe line as agreed; and that the said deed and any other papers or instruments should be corrected or else declared null and void and new papers executed to effectuate said agreement and show correctly the said easement."

(2) By adding a new paragraph to follow paragraph 17 of the complaint covered by paragraph VII hereinabove, reading: "17 (a) That at the times herein mentioned, as plaintiff is informed and believes, R. Shelton White was the President and chief executive officer and agent of Belvidere Building Company; and that the said company, through whom he developed the said lands, therefore and thereby had full knowledge of all the representations, negotiations, transactions and agreements leading up to the purchase and development of this land, and the said company is liable and responsible therefor, and is bound thereby; and the company was and is in law and in fact an 'alter ego' of the said White."

Defendants filed motion on 18 October, 1951, for the cancellation of plaintiff's notice of *lis pendens,* and in support thereof set forth the following:

1. That defendants R. Shelton White and wife, Elizabeth K. White, to whom plaintiff conveyed said land executed and delivered a deed con-

veying same to defendant Belvidere Building Company on 1 August, 1950, as appears of record in Book 1062, p. 297, Wake County Registry, more than 13 months before notice of *lis pendens* was filed, and said defendants were not the owners and holders of title to said land on 7 September, 1951, the date on which the notice of *lis pendens* was filed.

2. That plaintiff was not entitled to file and is not entitled to have a notice of *lis pendens:* (a) Against Belvidere Building Company, owner and holder of title to said lands, for the reason that plaintiff does not allege and show that said company was not and is not a purchaser for value in good faith, and that it had notice of any alleged fraud of the defendants White, when it acquired title to said lands on 1 August, 1950, more than a year prior to the filing of said notice of *lis pendens;* (b) against the defendants C. L. Lawrence, Trustee, and First-Citizens Bank & Trust Company, because it is not alleged and shown in the complaint that said defendants were not and are not purchasers for value in good faith and that they had notice of any alleged fraud of the defendants White, when they acquired title to said lands by deed of trust on 22 May, 1951, more than three months prior to the filing of said notice of *lis pendens;* and (c) against any of defendants in this action,—for the reason that this is not an action affecting the title to real property, in that plaintiff is not seeking to rescind the transaction whereby he agreed to convey, and did convey, the lands in the complaint to defendants White, but on the contrary is seeking to recover damages for alleged breach of the terms and conditions of his contract to convey and his conveyance of said land, and, therefore, has made his election and is now estopped to seek a rescission of his contract to convey and his conveyance of said lands.

3. That although plaintiff alleges in paragraph 16 of his complaint that his deed conveying said lands to defendants White should be corrected or else declared null and void and new papers executed to effectuate said alleged agreement and show correctly said "easement," he failed to attach to his complaint a copy of said agreement or contract, which was in writing, and make it a part of his complaint, or to quote its provisions, —the portion relating to said water line which reads as follows:

"FOURTH. A city water line has already been extended into a portion of the property hereinbefore described. If approval can be secured to further extend said city water line so as to use said water line in the development of the above described property and other adjoining property, and the party of the second part elects to make use of said city water line, the party of the second part agrees to pay to the party of the first part the sum of $5,000.00. If said water line is extended by the party of the second part, the party of the first part and all of the heirs of T. B. Parker shall have the right to tap on to said extended water line without

charge and to extend said water line in any street or streets shown on a subdivision plat covering said land; and such extension cost shall be paid for by the party of the first part or the heirs of T. B. Parker."

And plaintiff fails to allege that approval has been secured, or could be secured, to further extend said city water line so as to use said water line in developing the property described in said contract, and also fails to allege that the party of the second part elected to make use of said city water line in developing said property; that both plaintiff and defendants White and Belvidere made diligent efforts to secure approval to further extend said city water line so as to use said water line in the development of the property described in this contract and other adjoining property, but the city of Raleigh declined and refused to extend or to approve the extension of said city water line, and consequently defendants R. Shelton White and Belvidere Building Company did not and could not elect to make use of said city water line, in the development of said property, but the defendant Belvidere Building Company, to whom the Whites conveyed said property, found it necessary to make and did make other arrangements for supplying water for use in the development of said property.

And defendants attached affidavit of R. Shelton White in support of their said motion tending to show, among other things: (1) That he is president and chief executive officer of defendant Belvidere Company;

· (2) That plaintiff and this defendant entered into a written contract on 12 June, 1950 (a copy of which is attached and made a part of the affidavit), by the terms of which contract plaintiff, as party of the first part, contracted to sell to this defendant and this defendant, as party of the second part, contracted to purchase from plaintiff, a certain tract or parcel of land in Wake County, containing 19.84 acres, at the price of $900 per acre, to be paid $1,000 in cash upon execution of the contract and balance payable on 12 July, 1950, upon payment of which plaintiff agreed to execute and deliver to defendant, "or his assigns, a good and sufficient deed, in fee simple, conveying said land and premises" to "said party of the second part or his assigns, with general warranty and free from encumbrances . . . " This contract also contained the "Fourth" paragraph as quoted in the motion of defendants, and was not recorded.

· (3) That thereafter, on 18 July, 1950, plaintiff and his wife, upon payment to them of the purchase price thereof, executed and delivered to this defendant and his wife, a warranty deed conveying said tract of land, which deed was duly filed for record on 20 July, 1950, as appears of record in Book 1049 at page 349 in office of Register of Deeds for Wake County, N. C.

(4) That thereafter, on 1 August, 1950, this defendant and his wife executed and delivered to defendant Belvidere Building Company, a

North Carolina corporation, a warranty deed conveying to it the said tract of land, along with other land, which deed was duly filed for record 27 November, 1950, as appears of record in Book 1062 at page 297 in office of Register of Deeds for Wake County, N. C.

(5) That thereafter on 22 May, 1951, defendant Belvidere Building Company executed and delivered to defendant First-Citizens Bank & Trust Company its note in the sum of $335,000, and, as security therefor, executed and delivered to C. L. Lawrence, Trustee for defendant First-Citizens Bank and Trust Company, a deed of trust conveying a part of said land together with other land, which deed of trust was filed for record 31 May, 1951, as appears of record in Book 1075, at page 280, in office of Register of Deeds for Wake County, N. C. . . .

(8) And, that with reference to the provisions of paragraph 4 of the agreement of 12 July, 1950, plaintiff and affiant, this defendant, and Belvidere Building Company made diligent effort, but failed to secure approval to further extend said city water line, in full support of pertinent portion of said motion of defendants hereinabove set forth.

When the motion of defendants came on for hearing before the judge presiding at the regular October Civil Term, 1951, of Superior Court, and being heard, and "it appearing to the court from an examination of the entire record, including the notice of *lis pendens,* complaint, amendment to complaint, and the motion and attached papers of defendants, the said motion should be allowed," and in accordance therewith judgment was entered.

Plaintiff excepted thereto, and appeals to Supreme Court and assigns error.

*Simms & Simms and John M. Simms for plaintiff, appellant.*
*Smith, Leach & Anderson for defendants, appellees.*

WINBORNE, J. Does this action affect the title to real property? If it does, the judgment from which this appeal is taken would be in error. But if it does not, then the judgment is correct and should be affirmed. For the filing of the notice of the action, that is, *lis pendens,* is authorized only in actions affecting the title to real property. G.S. 1-116. From a careful consideration and analysis of the various phases of the complaint, in the light of applicable principles of law, it seems apparent that the purpose of this action is to recover damages caused by fraud. Hence, error in the judgment is not made to appear.

"The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must

be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss," *Adams, J.,* in *Electric Co. v. Morrison,* 194 N.C. 316, 139 S.E. 455; see also *Berwer v. Ins. Co.,* 214 N.C. 554, 200 S.E. 1, and cases there cited, and also *Hill v. Snider,* 217 N.C. 437, 8 S.E. 2d 202.

This principle applies to contracts and sales of both real and personal property. *May v. Loomis,* 140 N.C. 350, 52 S.E. 728; *Tarault v. Seip,* 158 N.C. 363, 74 S.E. 3; *Evans v. Davis,* 186 N.C. 41, 118 S.E. 845; *Berwer v. Ins. Co., supra.*

And a party who has been fraudulently induced to enter into a contract or sale has a choice of remedies. He may repudiate the contract, and, tendering back what he has received under it, may recover what he has parted with or its value; or he may affirm the contract, keeping whatever property or advantage he has derived under it, and may recover in an action for deceit the damages caused by the fraud. And, in a proper case, the defrauded party may be entitled to the equitable remedies of rescission and cancellation or reformation. But, as a general rule, the defrauded party cannot both rescind and maintain an action for deceit. If he elects to rescind the contract, he may recover back what he has parted with under it, but cannot recover damages for the fraud. On the other hand, if he elects to maintain an action for deceit, he cannot sue for rescission or reformation. *Fields v. Brown,* 160 N.C. 295, 76 S.E. 8; *Lykes v. Grove,* 201 N.C. 254, 159 S.E. 360; *Smith v. Land Bank,* 213 N.C. 343, 196 S.E. 481.

But the defrauded party is not allowed to rescind in part and affirm in part,—he must do one or the other. *May v. Loomis, supra; McNair v. Finance Co.,* 191 N.C. 710, 133 S.E. 85; *Willis v. Willis,* 203 N.C. 517, 166 S.E. 398; *Bolich v. Ins. Co.,* 206 N.C. 144, 173 S.E. 320; *Lykes v. Grove, supra; Smith v. Land Bank, supra.*

In the light of these principles, while the prayer for relief contained in plaintiff's complaint is framed in general terms, it is clear from a reading of the complaint, and the amendments thereto, that this is an action to recover monetary damages. Whether the allegations, or the proof in support thereof, make out a case for the jury, is of no concern on this appeal. But having elected to affirm the transaction in question, and sue to recover damages, plaintiff may not, at the same time, sue to rescind or reform in whole or in part. Hence, the action is not one affecting the title to real property within the purview of G.S. 1-116. See *Horney v. Price,* 189 N.C. 820, 128 S.E. 321; *Threlkeld v. Land Co.,* 198 N.C. 186, 151 S.E. 99; *Jarrett v. Holland,* 213 N.C. 428, 196 S.E. 314.

Therefore, the judgment below is

Affirmed.